Filed
D.C. Superior Court
08/29/2022 12:51PM
Clerk of the Court



**Superior Court of the District of Columbia**
**CIVIL DIVISION – Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

**Case No.** 2022 CA 003819

***Amended***

# COMPLAINT

Jurisdiction of this Court is founded on D.C. Code § 11-921.

| PLAINTIFF | | DEFENDANT |
| --- | --- | --- |
| Jes'Terieuz J. Howard | vs | The George Washington University |
| 235 Augusta Woods Drive | | Assistant Vice President for Equal Employment Opportunity, The George Washington University, 2100 Pennsylvania Ave, NW, Suite 250 |
| Address (No Post Office Boxes) | | Address (No Post Office Boxes) |
| Villa Rica (City) Georgia. (State) 30180 (Zip Code) | | Washington (City) D.C. (State) 20052 (Zip Code) |
| 202-577-7618 | | 202-994-1000 |
| Telephone Number | | Telephone Number |
| jt4anc@gmail.com | | facultyaffairs@gwu.edu |
| *Email Address (optional)* | | *Email Address (optional)* |

1. Write a short and plain statement of your claim, including any relevant facts, dates, and locations:

i. From the second year (pre 2020-2021 academic year) onwards, PhD student researchers in The Institute for Biomedical Sciences (The IBS) PhD Program at The George Washington University (GW), transition from stipends to salary. Outlined in page 10 of the 2019 The IBS student handbook, the research mentor receives notice of the recommended level of salary support. However, defendant Dr. Alison Hall, Director of The IBS Program, and defendant Dr. Catherine Limperopoulos (Plaintiff Jes'Terieuz Howard's mentor/advisor) created a hostile work environment and unfairly prevented his advancement from apprenticed trainee to employee of record. As a result of the defendants' conduct and the post-act injury, Mr. Howard's earning capacity has been diminished.

ii. Mr. Howard had completed all the necessary requirements (i.e., 48 hours of coursework) by the time he was ready to make the transition from a stipend-paid doctoral student trainee (or apprentice) to a salaried doctoral candidate in residence. Unfortunately, however, Mr. Jes'Terieuz Howard's lineage as an US American descendant of slavery, as outlined in a crucial supplemental document for Catherine Limperopoulos's National Institutes of Health (NIH) trainee funding application (NIH Diversity Supplement grants), resulted in unjust mistreatment, undue termination of future employment by blocking promotion, as well as unruly retaliation from The George Washington University administration. As to Dr. Limperopoulos' arbitrary and capricious assessment of Plaintiff's academic progress, it was unfounded and patently untrue, with no substantive evidence to support the claims and no evidence to demonstrate efforts to mitigate or address deficiencies in his training. Despite Mr. Howard's repeated attempts to obtain Dr. Limperopoulos' attention regarding the NIH Diversity Supplement application among other critical factors to his career advancements, he was ignored. As a result of the Coronavirus Pandemic (COVID-19), Mr. Howard was limited to a trail of electronic mail messages to communicate with Dr. Limperopoulos, without so much as a response with feedback in many instances.

Mr. Howard realleges that The IBS Phd Program Director retaliated against him and actively facilitated constructive discharge from the doctoral program after he expressed relevant critique about the long history of anti-Black American bigotry in the medical sciences. Mr. Howard alleges that Dr. Hall degraded him to a non degree-granting graduate program after offering him a Master's degree instead of offering him the chance to complete additional rotations in a lab by the start (August 30, 2021) of academic year 2021-2022, qualify for PhD candidacy, and ultimately earn the PhD degree. The acts violated Mr. Howard's first amendment rights, abridged his freedom of speech, and constitute retaliatory harassment based on his status as a male Black American descendant of slavery. Dr. Hall's comments resemble rhetoric in which Black American scholars are characterized as "Black extremists" for questioning structural and institutional racism. Censorship of this type can also be seen as psychological manipulation in which livelihood is on the line if the person does not conform. In the instant case, Mr. Howard has experienced untold physiological suffering. Due to the alleged failure to fairly promote him and dismissal due to discrimination, he lacks medical coverage for a therapist, which could impact his quality of life and worsen his mental health for years to come.

2. What relief are you requesting from the Court? Include any request for money damages.

WHEREFORE, Plaintiff seeks compensatory damages in the amount to be determined at trial, but sufficient to meet the jurisdictional requirements of this Honorable Court, plus interest, costs and attorneys' fees.

While I am not attempting to secure federal welfare participation, I am seeking compensation for lost wages, productivity, and pecuniary damages due to diminished mental and physical wellbeing.

3. State any other information, of which the Court should be aware:

**Statutes and Constitutional Law:**

**1. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ §2000e2(a) & 3(a) (race, color, gender, national origin).**

**2. According to Form HHS 690 presented by The Health & Human Services (HHS), Office for Civil Rights (OCR), defendants: The George Washington University, The Institute for Biomedical Sciences, and Developing Brain Institute at Children's National Hospital where Dr. Limperopoulos is Chief/Director, had been informed prior to the start of the training appointment in subject about pertinent Federal civil rights laws pursuant to the Civil Rights Act of 1964.**

**3. Title VI of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000d et seq. ("Title VI"), the Equal Education Opportunities Act and the Office for Civil Rights of the U.S. Department of Education prohibits certain equal protection violations based on race, color, and national origin by schools and institutions of higher education receiving federal funding.**

**4. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, protects the rights of individuals with disabilities in programs and activities that receive federal financial assistance, including federal funds. Jurisdictional agencies: HHS OCR; Department of Education OCR.**

**5. Title IX of the Education Amendments of 1972, as codified, 20 U.S.C. §§ 1681 and 1687. (Sex-based discrimination in school or education program that receives funding from the federal government) and Section 504 of the Rehabilitation Act of 1973 ("504") (29 U.S.C. §794).**

**The Eunice Kennedy Shriver National Institute of Child Health and Human Development (NICHD) through which defendant Dr. Limperopoulos receives most of her federal NIH funding dollars, is funded by the Department of Health and Human Services of the Federal Government.**

## SIGNATURE

To the best of my knowledge, everything in this Complaint is true and I am not filing this Complaint to harass the Defendant(s). Superior Court Civil Rules 11(b).

______________________________________
**SIGNATURE**

August 29, 2022
______________________________________
**DATE**

Subscribed and sworn to before me this ___________________ day of ________________ 20______.

______________________________________________________
(Notary Public/Deputy Clerk)

# ADDENDUM TO COMPLAINT

Case No. ____________________

## ADDITIONAL PARTY NAMES AND ADDRESSES

**The Institute for Biomedical Sciences**

☐ PLAINTIFF ■ DEFENDANT

**2300 I Street, NW, Ross Hall, Room 561**
Address (No Post Office Boxes)

**Washington** **DC** **20037**
City State Zip Code

**202-994-2179**
Telephone Number

**gwibs.gwu.edu**
Email Address (Optional)

**Dr. Alison Hall**

☐ PLAINTIFF ■ DEFENDANT

**2300 I Street, NW, Ross Hall, Room 706**
Address (No Post Office Boxes)

**Washington** **DC** **20037**
City State Zip Code

**202-994-2179**
Telephone Number

**akhall@gwu.edu**
Email Address (Optional)

**Dr. Catherine Limperopoulos**

☐ PLAINTIFF ■ DEFENDANT

**111 Michigan Ave, NW**
Address (No Post Office Boxes)

**Washington** **DC** **20010**
City State Zip Code

**202-476-3842**
Telephone Number

**CLimpero@childrensnational.org**
Email Address (Optional)

☐ PLAINTIFF ☐ DEFENDANT

Address (No Post Office Boxes)

City State Zip Code

Telephone Number

Email Address (Optional)

Attention: SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Case No.

*Plaintiff*
Jes'Terieuz J. Howard

V.

The George Washington University, a corporation, The Institute for Biomedical Sciences an individual, Alison Hall, and Catherine Limperopoulos

*Defendants*

1. Employment Discrimination on the bases of race/national origin/color, sex/gender, and disability
2. Negligence
3. Retaliation, Intentional Infliction of Physical & Emotional Distress
4. Damaged Reputation & Lost Productivity

Demand Jury Trial: ✔ Yes No

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION**

**I. The Parties to This Complaint**

**A. The Plaintiff**

| | |
|---|---|
| Name | Jes'Terieuz Howard |
| Street Address | 235 Augusta Woods Drive |
| City and County | Villa Rica, Carroll County |
| State and Zip Code | Georgia 30180 |
| Telephone Number | 202-577-7618 |
| E-mail Address | jt4anc@gmail.com |

**B. The Defendants**

Defendant No. 1

Name The George Washington University

Job or Title Assistant Vice President for Equal Employment Opportunity

Street Address 2100 Pennsylvania Ave, NW, Suite 250

City and County Washington

State and Zip Code DC 20052

Telephone Number 202-994-1000

E-mail Address *(if known)*

Defendant No. 2

Name The George Washington University, The Institute for Biomedical Sciences

Job or Title

Street Address 2300 I Street, NW

City and County Washington

State and Zip Code DC 20037

Telephone Number 202-994-2179

E-mail Address

Defendant No. 3

Name Dr. Alison Hall

Job or Title Associate Dean, Research Workforce Development

Street Address 2300 I Street, NW

City and County Washington

State and Zip Code DC 20037

Telephone Number 202-994-0200

E-mail Address *(if known)* akhall@gwu.edu

Defendant No. 4

| | |
|---|---|
| Name | Dr. Catherine Limperopoulos |
| Job or Title | Director, Developing Brain Institute |
| Street Address | 111 Michigan Ave NW |
| City and County | Washington |
| State and Zip Code | DC 20010 |
| Telephone Number | 202-476-3842 |
| E-mail Address *(if known)* | CLimpero@childrensnational.org |

**C. Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | The George Washington University |
| Street Address | 1918 F Street, NW |
| City and County | Washington |
| State and Zip Code | DC 20052 |
| Telephone Number | 202-994-1000 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to:

1. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ §2000e2(a) & 3(a) (race, color, gender, national origin).

2. According to Form HHS 690 presented by The Health & Human Services, Office for Civil Rights (OCR), defendants: The George Washington University, The Institute for Biomedical Sciences, and Developing Brain Institute at Children's National Hospital where Dr. Limperopoulos is Chief/Director, had been informed prior to the start of the training appointment in subject about pertinent Federal civil rights laws pursuant to the Civil Rights Act of 1964.

3. Title VI of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000d et seq. ("Title VI"), the Equal Education Opportunities Act and the Office for Civil Rights of the U.S. Department of Education prohibits certain equal protection violations based on race, color, and national origin by schools and institutions of higher education receiving federal funding.

4. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, protects the rights of individuals with disabilities in programs and activities that receive federal financial assistance, including federal funds. Jurisdictional agencies: HHS OCR; Department of Education OCR

5. Title IX of the Education Amendments of 1972, as codified, 20 U.S.C. §§ 1681 and 1687. (Sex-based discrimination in school or education program that receives funding from the federal government).

## III. Statement of Claim

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ✔ Failure to hire me.
- ✔ Termination of my employment.
- ✔ Failure to promote me.
- ✔ Failure to accommodate my disability.
- ✔ Unequal terms and conditions of my employment.
- ✔ Retaliation.

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

June 2, 2021; July 21, 2021; August 30, 2021

C. I believe that defendant(s) *(check one)*:

- ✔ is/are still committing these acts against me.
- is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ✔ race — Black American
- ✔ color — Medium Brown (dark skin)
- ✔ gender/sex — Male
- religion
- ✔ national origin — American slavery descendant
- ✔ disability or perceived disability — Attention Deficit Hyperactivity Disorder

E. The facts of my case are as follows. Attach additional pages if needed.

**1**

i. From the second year (pre 2020-2021 academic year) onwards, PhD student researchers in The Institute for Biomedical Sciences (The IBS) PhD Program at The George Washington University (GW), transition from stipends to salary. Outlined in page 10 of the 2019 The IBS student handbook, the research mentor receives notice of the recommended level of salary support. However, defendant Dr. Alison Hall, Director of The IBS Program, and defendant Dr. Catherine Limperopoulos (Plaintiff Jes'Terieuz Howard's mentor/advisor) created a hostile work environment and unfairly prevented his advancement from apprenticed trainee to employee of record. As a result of the defendants' conduct and the post-act injury, Mr. Howard's earning capacity has been diminished.

ii. Due to racial/lineal, sex/gender, and disability discrimination by University stakeholders against Mr. Howard, a Black-American (descendant of US chattel slavery) man who had pre-disclosed a disability (ADHD) and sought reasonable accommodations, the transition from stipend to salary was impeded.

iii. Mr. Howard had completed all the necessary requirements (i.e., 48 hours of coursework) by the time he was ready to make the transition from a stipend-paid doctoral student trainee (or apprentice) to a salaried doctoral candidate in residence. Unfortunately, however, Mr. Jes'Terieuz Howard's lineage as an US American descendant of slavery, as outlined in a crucial supplemental document for Catherine Limperopoulos's National Institutes of Health (NIH) trainee funding application (NIH Diversity Supplement grants), resulted in unjust mistreatment, undue termination of future employment by blocking promotion, as well as unruly retaliation from The George Washington University administration. As to Dr. Limperopoulos' arbitrary and capricious assessment of Plaintiff's academic progress, it was unfounded and patently untrue, with no substantive evidence to support the claims and no evidence to demonstrate efforts to mitigate or address deficiencies in his training. Despite Mr. Howard's repeated attempts to obtain Dr. Limperopoulos' attention regarding the NIH Diversity Supplement application among other critical factors to his career advancements, he was ignored. As a result of the Coronavirus Pandemic (COVID-19), Mr. Howard was limited to a trail of electronic mail messages to communicate with Dr. Limperopoulos, without so much as a response with feedback in many instances.

iv. According to annual Funding Opportunity Announcement (FOA) [number PA-21-071] for NIH Diversity Supplement Grant application, NIH encourages institutions to diversify their student and faculty populations to enhance the participation of individuals from groups including:

A. Individuals from racial and ethnic groups that have been shown by the National Science Foundation (NSF) to be underrepresented in health-related sciences on a national basis.

B. Individuals with disabilities, who are defined as those with a physical or mental impairment that substantially limits one or more major life activities, as described in the American with Disabilities Act of 1990.

C. Individuals from disadvantaged backgrounds, defined as those who meet *two or more* of the following criteria: 1.Were or currently homeless; 2.Were or currently are in the foster care system; 3.Were eligible for the Federal Free and Reduced Lunch Program for two or more years; 4. Have/had no parents or legal guardians who completed a bachelor's degree; 5.Were or currently are eligible for Federal Pell grants; 6. Received support from the Special Supplemental Nutrition Program for Women, Infants and Children (WIC) as a parent or child; 7. Grew up in a) US rural area or b) Center for Medicare and Medicaid Services-designated Low-income and Health Professional Shortage Areas.

D. Women

v. As someone descended from the American institution of chattel slavery and post-slavery institutions (i.e., Jim Crow), Mr. Howard was qualified based on section A., given the aforementioned program guideline. Having reported paperwork under the ADA of 1990 he also checked section B. And born and raised in dilapidated public housing in Birmingham, Alabama Plaintiff fulfilled sections 1, 3, 4, 5, 6, and 7 of C-group qualifications. Plaintiff Jes'Terieuz Howard was raised in his biological mother's home from birth until college, and because of male gender/sex differentiation, Plaintiff does not qualify to select sections C-2 and D, respectively. On that account, it is inconceivable to how an 80% criteria rating would not result in awarding the so-called Diversity Supplement grant given the PD/PI's transparency with respect to parent grant eligibility, and prompt submission of the application before the deadline on May 15, 2021.

vi. During an internal grievance panel hearing held on April 7, 2022, Plaintiff asked Dr. Hall why at that late date was he learning about Dr. Limperopoulos' supposed apprehension as it related to advisor-advisee (in)compatibility. After nearly 30 years in student affairs, was it not critical in Dr. Hall's mind that the student should be made aware of potential advisors' sentiments regarding student (in)compatibility as pertains to overall function and fit within the PI's laboratory group? And most importantly, did this feeling of predetermined paired misalignment play a role in the ease with which Dr. Limperopoulos haply terminated Mr. Howard's position, impeding his advancement to salaried doctoral investigator-in-training upon reading the NIH candidate background statement which apparently was not to the program's liking? According to electronic mail message from Dr. Hall to Mr. Howard on April 26, 2021:

> vii. "I thought the research approach was very strong. The candidate background section had some sections that got my attention with a tone of some anger and emotion that might need another outlet for expression. From The IBS program perspective, I also want to make sure you have all our support."
>
> viii. "I'd like you to meet my colleague Dr. Lorenzo Norris for a resiliency consult. I've known Lorenzo since our shared days in Cleveland, and he and I work together in the anti-racism coalition. He's been in the GW student affairs group for a long time and he's just become the chief wellness officer for our enterprise and has a lot to offer as you head into the next stressful candidacy phase of training. Can I give him your contact info?"

viii. Mr. Howard claims that Dr. Limperopoulos maintained a communicatively distant composure throughout his appointment under her mentorship. It may be probable that she maintained such distanced approach to advising because, according to Dr. Hall's testimony, Dr. Limperopoulos wasn't confident the advisor-advisee collaboration would succeed before it even started. In fact, during the internal grievance hearing on April 7, 2022, it was revealed by Dr. Alison Hall that Dr. Limperopoulos indicated on a logistics form shared between Principal Investigators (PIs; aka, mentors) and The IBS administrative office in summer 2020, that neither she nor her lab was a good match for Mr. Howard. Mr. Howard was not made privy to this information until after the mentoring relationship disintegrated and his training was terminated due to administrative incompetence and negligence in June 2021. It has been alleged by Mr. Howard, that Dr. Limperopoulos had withdrawn from advising him, from funding his research, and from supporting the remainder of his graduate training because she disapproved of the benign but historically firm nature of the above mentioned autobiographical statement he submitted to her in or around March 2021. Moreover, the aforementioned comments by Dr. Hall suggesting Mr Howard obtain psychiatric treatment from a personal confidant of hers, under the pretense of "resiliency consult," was unprofessional and constituted aggressive workplace harassment creating an intimidating, hostile, and offensive work environment for Mr. Howard.

**2**

i. Dr. Hall, with decades of experience in the arena of trainer-trainee (mentor-mentee; advisor-advisee) interactions through professional roles including Director of The Institute for Biomedical Sciences PhD Programs and Associate Dean for Research Workforce Development acted negligently and is complicit in propagating dysfunctional advisement and mentoring relationship between Mr. Howard and Dr. Limperopoulos by failing to conduct due diligence on behalf of the trainee when evaluating pertinent documents relating to the issue at hand (i.e., Lab rotation mentee evaluation forms).

ii. After his dismissal from the Limperopoulos Lab, Mr. Howard had contacted upwards of 8 allegedly eligible faculty PIs or advisors in the interdisciplinary Pharmacology/Physiology and Neuroscience departments of The IBS PhD program and inquired about the possibility of a fall 2021 research rotation. Eventually, for varying reasons all 8 PIs rejected him. Dr. Hall was clear in her electronic mail message to Mr. Howard on July 8, 2021:

iii. "The IBS program cannot require a faculty to take you in the lab, and without a research project you cannot proceed to candidacy/dissertation or continue in the PhD program."

iv. A statement on the record from Dr. Hall indicates that it is not uncommon practice for trainees to rotate in different PI's labs across any of the five overlapping PhD programs, especially when the original trainee-trainer mentorship ends at the end of the second year for any given reason. There was no opportunity for Mr. Howard to continue his training into the subsequent 2021-2022 academic year. As a result, Plaintiff was the only student in his 13-student cohort who did not complete the program beyond the critical second-year transitionary period. Additionally, Mr. Howard was also the only Black American in his cohort, and the only Black American male in the entire The Institute for Biomedical Sciences PhD program, out of more than 40 trainees.

v. As a result of the events discussed above, Mr. Howard has experienced loss of professional reputation, homelessness, loss of healthcare, loss of credit standing, and inability to pay bills including rent, credit card balances, car payments, auto insurance, student loans, etc.

vi. This complaint to the Superior Court of The District of Columbia, concerns not only Mr. Howard's status as a pre-candidacy stipend-supported PhD student researcher, but also the promotion and salaried position he would have been eligible for and received had discrimination not taken place.

**3**

i. As a result of Dr. Halls' apparent consternation regarding his resistance to the ongoing programmatic harassment and intimidation, Mr. Howard alleges reprisals such as failure to act expeditiously regarding, among other things, lost wages and future earning capacity, reinstatement of health insurance and welfare, and consideration of academic productivity or idleness.

ii. Mr. Howard has alleged that certain conditions such as a lack of laboratory space, insufficient parent (or PI) grant funding, and/or program reorganization are arbitrarily deployed pretense behind which PIs and The IBS in general use as concealment to disparage him and prevent his advancement within the field of health science research. Mr. Howard maintains that in light of this, Black (specifically descendant of slavery) trainees are disproportionately harmed. These conditions directly hurt Black Americans for the fact that they disproportionately lack social capital in terms of members of their distinct group in the professoriate and/or senior research professional role. Consequently, Black Americans are commonly first persons wantonly discharged. Disparate treatment of this form inadvertently blemishes(or undermines) their training record with gaps in productivity as they struggle to make up for the fact that their supervisors oftentimes knowingly or unknowingly display little regard for Black Americans short-term and long-term career prospects.

**4**

i. On or about May 26, 2021, the last official day of Mr. Howard's position as doctoral trainee (research apprentice or intern) under defendant Dr. Limperopoulos' mentorship because of pre-promotion discharge/dismissal, Dr. Limperopoulos informed him and The IBS administration that Mr. Howard's traineeship had been terminated because he was incompetent, unfocused, and physically distant during a Coronavirus (COVID-19) pandemic, which prevented trainees from entering the Children's National Hospital due to quota mandates. There was no evidence to support these claims.

ii. Plaintiff alleges that Dr. Limperopoulos intentionally thwarted any and all chances of him receiving the NIH Diversity Supplement award based on the content of the NIH "candidate statement and background," which were viewed unfavorably by The IBS administration. As the descendant of chattel slavery and author of a candidate background chronicling the horrifying history of medical apartheid during eras of enslavement, the Jim Crow period of legal segregation and discrimination, and the decades that followed, Mr. Howard is alleging that Dr. Limperopoulos' decision to terminate his role causally connected to the explicit hostility from Dr. Hall with regard to the candidate statement and background, leading Dr. Limperopoulos to prematurely terminate his graduate research and access to approaching promotion for these reasons. This insidious animus toward Mr. Howard based on written content within his autobiographical statement constituted grave pre-act misconduct. Plaintiff has lost productivity in his research and his professional reputation tarnished because of unlawful dismissal/termination of his access to research laboratories through enrollment in a doctoral degree-granting program.

iii. Mr. Howard realleges that The IBS Phd Program Director retaliated against him and actively facilitated constructive discharge from the doctoral program after he expressed relevant critique about the long history of anti-Black American bigotry in the medical sciences. Mr. Howard alleges that Dr. Hall degraded him to a non degree-granting graduate program after offering him a Master's degree instead of offering him the chance to complete additional rotations in a lab by the start (August 30, 2021) of academic year 2021-2022, qualify for PhD candidacy, and ultimately earn the PhD degree. The acts violated Mr. Howard's first amendment rights, abridged his freedom of speech, and constitute retaliatory harassment based on his status as a male Black American descendant of slavery. Dr. Hall's comments resemble rhetoric in which Black American scholars are characterized as "Black extremists" for questioning structural and institutional racism. Censorship of this type can also be seen as psychological manipulation in which livelihood is on the line if the person does not conform. In the instant case, Mr. Howard has experienced untold physiological suffering. Due to the alleged failure to fairly promote him and dismissal due to discrimination, he lacks medical coverage for a therapist, which could impact his quality of life and worsen his mental health for years to come.

**Statutes & Constitutional Laws**

i. Plaintiff Jes'Terieuz Howard realleges here that The George Washington University operated under status-based discriminatory misconduct according to Title VII of the Civil Rights Act of 1964, §2000e–2(a), whereby defendants Dr. Hall, Dr. Limperopoulos, The IBS administrators and University leadership have been complicit in anti-descendant of slavery racial (Black) and sex (male) bias against Mr. Howard, an apprentice/trainee/student from as early as Spring 2020, up to the present. Also included in Title VII is 'employer retaliation on account of an employee's having opposed, complained of, or sought remedies for unlawful workplace discrimination' (§2000e–3(a)). The Defendants' refusal to expeditiously and promptly undo a diminution in Mr. Howard's capacity to obtain doctorate research training and earn a living constitute reprisal.

ii. According to Assurance of Compliance (Form HHS 690) with the HHS Office for Civil Rights (OCR), The George Washington University, The Institute for Biomedical Sciences, and the Developing Brain Institute at Children's National Hospital where Dr. Limperopoulos is Chief/Director, had been informed of pertinent Federal civil rights laws. Despite binding agreements to terms that mandate fair and equitable treatment for all persons of Mr. Howard's particular racial/lineal background, these institutional stakeholders have breached this contract and have blatantly violated his civil rights under Title VI of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color, or national origin in any program or activity that receives Federal funds such as the National Institutes of Health (NIH) Diversity Supplement grant or other Federal financial assistance.

iii. Title VI of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000d et seq. ("Title VI") and the Equal Education Opportunities Act and the Office for Civil Rights of the U.S. Department of Education (DoEd) prohibits certain equal protection violations including race, color, and national origin discrimination by schools and institutions of higher education receiving federal funding. In addition to race, color, national origin, and sex based discrimination, the Civil Rights Division of the Department of Justice has joint responsibility with DoEd for enforcing Section 504 (along with Title III of the Americans with Disabilities Act (ADA)), germane to the present current complaint.

iv. Section 504 of the *Rehabilitation Act of 1973* protects the rights of individuals with disabilities in programs and activities that receive federal financial assistance, including federal funds. Plaintiff Mr. Howard's disclosure of ADHD and decision to seek reasonable accommodations may have influenced decisions about educational and or employment training programs under Federal grants, including the NIH Diversity Supplement grant.

v. Black American men and boys, especially those who descend from the American institutions of chattel slavery, Jim Crow segregation, redlining redistricting, and mass incarceration have historically and into the present been denied admissions and promotion within the higher education complex on the basis of their sex and race, especially in the Science Technology Engineering & Math (STEM) fields. Mr Howard has alleged a violation of Title IX of the Education Amendments of 1972, codified at 20 U.S.C. §§ 1681 and 1687, which prohibits discrimination on the basis of sex in education programs and activities such as the NIH Diversity Supplement grant and/or other NIH training awards and grants.

vi. The Eunice Kennedy Shriver National Institute of Child Health and Human Development (NICHD) through which Dr. Limperopoulos receives most of her federal NIH funding dollars, is funded by the Department of Health and Human Services of the Federal Government. Black Americans, specifically Black American men and boys, are less likely to receive NIH grant funding at the trainee level as well in the professorate.

***BLANK PAGE***

## IV. Relief

i. Emotional/Physical/Financial Distress: Dollar should be based on damages incurred consequent to a loss of over one year out of the workforce because of institutional discrimination based on race/color/national origin, sex and disability. Moreover, Plaintiff lacked financial means to pay off debts (e.g., credit card, auto payments, auto insurance, federal student loans etc). Because Plaintiff's currently unable to procure funds comparable to the fellowship in academia prior to the discriminatory acts and wrongful termination of training and interruption of promotion, much of these debts have defaulted. As a graduate researcher, Plaintiff's unlawful discharge immediately prior to promotion and transition into the salaried employment, disqualified Plaintiff from pursuing wage replacement benefits from the Office of Workers Compensation Programs (OWCP). Mr Howard's training halted at the quasi-contractor position and therefore he was ineligible for the wage replacement benefits associated with full-time employment.

ii. The plaintiff's ability to obtain funding is dependent upon his enrollment in a doctorate degree-granting program. Unless Plaintiff is enrolled in a (doctorate) degree-granting program under mentorship of a Principal Investigator, he is not eligible to apply for fellowships for the upcoming academic year, at least not at a level that matches his salary value from the previous year and is aligned with the promotional raise he would have qualified for had discrimination not occurred. If discrimination on the bases of race, color, national origin, sex, and disability is allowed to continue at this rate, Plaintiff will not only remain in poverty in years immediately following the act, but also have less of a chance of escaping poverty in the future.

iii. In addition, The George Washington University's partnership in collaboration with Aetna was the sole provider of Plaintiff's healthcare plan during Plaintiff's mentorship in The Institute for Biomedical Sciences (IBS) PhD program. When he was wrongfully expelled from the PhD training program because of alleged protected status discrimination, Plaintiff lost coverage for eye care, mental health services, dermatologic therapy, and other important health expenditures. As a result, Mr. Howard has had to (a) pay out of pocket for much of those typically covered costs, or (b) go without altogether. For example, Mr. Howard is legally blind and because Plaintiff does not have financial backing or health insurance to schedule an eye examination or purchase new eyeglasses. Plaintiff has suffered from minor tooth aches due to lack of access to dental care.

iv. From September 2019-August 2021, Plaintiff had been a recipient of the Supplemental Nutrition Assistance Program (SNAP). Plaintiff qualified for the program because the *annual graduate student stipend during the first two years as part of The IBS totaled only $33,000*. In a city like Washington, DC that is right at the poverty line, therefore making Plaintiff eligible for federal benefits. When Plaintiff was wrongfully dismissed from The IBS program in July 2021, Mr. Howard's pathway to promotion in the form of salary was also stripped, and Plaintiff no longer qualified for SNAP benefits according to agency work requirements.

v. Similarly, Mr. Howard qualified for Federal housing assistance as well. Though Mr. Howard hadn't applied or received housing assistance during two years in the program, it was certainly an avenue Mr. Howard would have considered in later stages of the degree program. However, when The IBS administration and faculty discriminated against Plaintiff based on race/national origin/color, sex, and reported disability, wrongfully discharging Plaintiff, Plaintiff's eligibility for federal housing assistance ceased as well. Consequently, Plaintiff spent thousands of dollars lodging in hotel, or in extreme circumstances: sleeping on public transit, in fast-food restaurants, or public beaches.

vi. The aforementioned welfare programs were only means to support Mr. Howard during his pre-candidacy traineeship until the date that he would be reasonably promoted after satisfactorily crossing the threshold to said promotion, which was denied him. These welfare figures are mentioned here to demonstrate what was lost as a result of the pre-employment discrimination that occurred. Though plaintiff is not attempting to secure government welfare, Plaintiff is seeking compensation for lost wages, productivity, and compensatory pecuniary damages for past and future pecuniary damages (i.e., out-of-pocket expenses) and non-pecuniary loses attendant to embarrassment, humiliation, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of health, loss of consortium, and for losses associated with other disruptions to normative activities related to early adulthood.

vii. WHEREFORE, Mr. Howard seeks compensatory damages in the amount to be determined at trial, but sufficient to meet the jurisdictional requirements of this Honorable Court, plus interest, and costs.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: *8/29/2022*

Signature of Plaintiff

Printed Name of Plaintiff Jes'Terieuz J. Howard